IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RODNEY BLACK, #B86195, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-cv-1096-SMY |
| | ) |
| DR. CRAIG ASSELMEIER, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Rodney Black, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983. He alleges that Defendant Dr. Craig Asselmeier was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Now pending before the Court is Defendant's Motion for Summary Judgment (Doc. 29), which Black opposes (Doc. 32). For the following reasons, the motion is **GRANTED**.

### Factual Background

Construed in the light most favorable to Plaintiff, the evidence and reasonable inferences establish the following facts relevant to the pending motion: Black was transferred to Menard Correctional Center on April 30, 2019 (Doc. 30-1, pp. 2-3). Dr. Asselmeier, a Wexford Health Sources, Inc. dentist, treated Menard inmates in need of dental services (Doc. 30-2, at ¶ 4). Dr. Asselmeier has substantial experience in treating patients with missing teeth in his dental career, including patients who were fully edentulous (missing all their teeth) (Doc. 30-2 at ¶ 6).

For non-emergent dental issues, prisoners at Menard must generally submit health service request forms and will thereafter be seen in nurse sick call, where a nurse will assess the patient's symptoms and may schedule a dentist appointment or contact a dentist via telephone for verbal

orders as necessary (Doc. 30-2, at ¶ 7).

Dr. Asselmeier saw Black on May 6, 2019 for a Receiving and Classification ("R&C") exam following Black's transfer to Menard (Doc. 30-1, at pp. 170, 829; Doc. 30-2, at ¶ 10).  He observed that Black was missing all but teeth #23-25 and assessed that those teeth needed treatment (Doc. 30-1, at pp. 170, 829; Doc. 30-2, at ¶ 10).  He also noted that Black had a full upper denture and provided a denture cup to him. *Id.*

Dr. Asselmeier wrote an order on June 19, 2019 for Black to be placed on the extraction list for teeth #23, #24, and #25 (Doc. 30-1, at p. 829; Doc. 30-2, at ¶ 11).  He planned for Black to be placed on the list for full bottom dentures once those teeth were extracted because it was not clinically appropriate to order partial dentures when Black had only three bottom teeth (Doc. 30-1, at p. 829; Doc. 30-2, at ¶¶ 11, 12; Doc. 30-3, at p. 48).

Another Menard dentist extracted Black's teeth on August 28, 2019 and planned for him to be placed on the list for full upper and bottom dentures (Doc. 30-1, at p. 829; Doc. 30-2, at ¶ 13).  Black was placed on the denture list in October 2019 (Doc. 30-2, at ¶ 22).

On May 4, 2020, Black wrote a kite (informal written communication) to Dr. Asselmeier stating that it was difficult to eat and requesting dentures (Doc. 30-1, at p. 829; Doc-2, at ¶ 16).  In response to the kite, Dr. Asselmeier placed Black on a therapeutic diet for medical/soft diet beginning on May 4, 2020 and continuing until Black received his dentures (Doc. 30-1, at pp. 210-25, 693, 695, 699, 829; Doc. 30-2, at ¶ 16).  Dr. Asselmeier explained that no denture impressions could be done during COVID-19 quarantine due to public safety measures (Doc. 30-1, at p. 829; Doc. 30-2, at ¶ 16).

The State of Illinois and the IDOC ordered severe quarantine restrictions on patient movement and coordination with off-site treating institutions and labs throughout 2020.  The

restrictions were not lifted until sometime in early 2021 (Doc. 30-2, at ¶ 19). According to Wexford policy, the process for obtaining dentures at Menard included placing a patient on a wait list. Then, after the patient's name came up on the list, a dentist must request approval for the dentures from Wexford's Prosthetic Advisory Dentist, Dr. Karanbir Sandhu (Doc. 30-2, at ¶ 20).

Dr. Lillian Overall, a dentist at Menard, sent a request to Dr. Sandhu for full upper and lower dentures for Black on February 2, 2021 (Doc. 30-1, at p. 693; Doc. 30-2, at ¶ 21). She noted that Black was missing teeth #1-16 and #17-32 and that a dental prosthetic services review had been completed (Doc. 30-1, at p. 693; Doc. 30-2, at ¶ 21).

Black filed a grievance on March 15, 2021 complaining that Dr. Asselmeier delayed providing dentures to him, stating his gums were swollen and that eating without teeth caused constipation and indigestion, complaining that the dental soft tray was the same meal that other inmates received, and requesting that Dr. Asselmeier make impressions of his teeth so that he could get dentures (Doc. 30-1, at p. 693; Doc. 30-2, at ¶ 22; Doc. 30-4, at pp. 56-58). Dr. Asselmeier responded to Black's grievance on March 18, 2021 and explained that his name came up on the denture list on February 2, 2021 and that he was seen for his evaluation appointment that day (Doc. 30-2, at ¶ 22). Dr. Asselmeier further explained that a prosthetic review was submitted to Dr. Sandhu, Wexford's Prosthetic Advisory Dentist, and that the dental department was waiting for the prosthetic review to be approved by Dr. Sandhu per policy. *Id.* He stated in his written response that Black would be scheduled to be evaluated for denture fittings once the authorization form was received by the dental office. *Id.*

Dr. Overall completed a Dental Prosthetics Services Review form on March 18, 2021 which requested full dentures for Black and explained that teeth #18-22, 26-31, and 1-16 teeth were missing at intake (Doc. 30-1, at p. 179; Doc. 30-2, at ¶ 23). Dr. Sandhu approved Dr.

Overall's request on March 23, 2021. *Id.*

On March 30, 2021, Dr. Overall ordered alginate impressions of the upper and lower teeth at the lab for custom trays for final impressions (Doc. 30-1, at p. 693; Doc. 30-2, at ¶ 25) and ordered final impressions for full upper and lower dentures at the lab for a wax bite on April 23, 2021. *Id.*

Dr. Asselmeier saw Black on May 21, 2021. During the appointment, Black gave a wax bite impression for his dentures (Doc. 30-1, at p. 693; Doc. 30-2, at ¶ 26). Dr. Asselmeier saw Black again on June 29, 2021, and Black tried on his wax dentures successfully (Doc. 30-1, at p. 693; Doc. 30-2, at ¶ 27). Dental staff delivered Black's dentures with denture cup on August 11, 2021 (Doc. 30-1, at pp. 178, 695; Doc. 30-2, at ¶ 28).

On August 31, 2021, Dr. Asselmeier saw Black for a dental encounter and adjusted the dentures to Black's satisfaction (Doc. 30-1, at p. 695; Doc. 30-2, at ¶ 30). He discontinued Black's dental soft diet at that time. *Id.* Dr. Asselmeier did not have any further significant encounters with Black after December 2021 (Doc. 30-2, at ¶¶ 3, 32).

According to Dr. Asselmeier, Black's dental condition was non-urgent, and COVID-19 quarantine procedures prevented coordination with off-site dental labs for over a year (Doc. 30-2, at ¶ 33). While waiting for his dentures, Black did not suffer from acute dental symptoms such as bleeding or abscessed gums. (Doc. 30-1, p. 180, 464; Doc. 30-2, at ¶ 34; Doc. 30-3, p. 66, 77-78). According to Dr. Asselmeier, Black's prognosis did not worsen, and he did not suffer any unnecessary pain and discomfort while awaiting full upper and bottom dentures at MCC (Doc. 30-2, at ¶ 35).

Black testified that there may have been times when his gums bled but "you can't go to them with it because now they label you as a problem child and now your care takes even longer"

(Doc. 30-3, pp. 64-65). Black did not lose weight while waiting for his dentures (Doc. 30-1, at p. 180, 464). He did not eat either the regular or dental soft trays provided by IDOC because the food was "uneatable" (Doc. 30-3, pp. 64-66). Black would purchase commissary items such as oatmeal, chili, noodles, refried beans, and other soft food items. *Id*. at pp. 69, 75-76; Doc. 30-5.

## Discussion

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue as to any material fact – that is where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). If the evidence is merely colorable or is not sufficiently probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

The Eighth Amendment prohibits deliberate indifference to the serious medical needs of prisoners. *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A medical professional may be held to have displayed deliberate indifference if the treatment decision was "blatantly inappropriate" even to a layperson or there is evidence that the treatment decision was "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Black contends that, on its face, his 28-month wait to receive his dentures is unconstitutional. It is undisputed that Black was put on the waiting list for dentures in October

2019, did not receive approval of his dentures until March 2021, and did not receive his dentures until August 2021.  While Black maintains that he was in pain during this time, there is no evidence that Dr. Asselmeier was made aware of any pain or anything that would constitute a serious medical need.  Black did not complain to Dr. Asselmeier about pain or bleeding gums while waiting for his dentures.  He wrote Dr. Asselmeier a kite on May 4, 2020 requesting dentures because it was hard to eat but did not complain about pain or bleeding.  In response, Dr. Asselmeier placed Black on a therapeutic soft diet and renewed the request monthly until Black received his dentures. The only time Black complained was in his March 15, 2021 grievance in which he stated that his gums were swollen and that he was experiencing constipation and indigestion – none of which are conditions reflecting objectively serious medical needs.  It is also undisputed that no denture impressions could be done during the COVID-19 quarantine due to public safety measures.

A delay in treatment does not violate the Eighth Amendment when there is no substantial risk of harm or when the delay does not exacerbate the injury.  *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016), *as amended* (Aug. 25, 2016).  And deliberate indifference can result only when the delay in care was in control of the defendant.  *See Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002).  Here, Black's condition did not worsen during the course of Dr. Asselmeier's treatment.  He did not lose weight while waiting for dentures and did not experience significant difficulty with eating.  And although Black waited 22 months to receive his dentures, the delay in this case was unavoidable and due to administrative reasons outside of Dr. Asselmeier's control.  Black's name came up on the denture list on February 2, 2021, after some COVID-19 quarantine measures had lifted, and he was approved to receive dentures by Wexford's Prosthetic Advisory Dentist on March 23, 2021.  Under these circumstances, no reasonable jury could find that Dr.

Asselmeier's actions were the cause of the delay or that he ignored a serious medical need. Accordingly, summary judgment is appropriate.

## Conclusion

For the foregoing reasons, Defendant Dr. Asselmeier's Motion for Summary Judgment (Doc. 29) is **GRANTED**. As no claims remain, the Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

**DATED: August 14, 2023**

                                                     **STACI M. YANDLE**
                                                     **United States District Judge**